﻿Citation Nr: AXXXXXXXX
Decision Date: 08/29/19 Archive Date: 08/28/19

DOCKET NO. 190225-3137
DATE: August 29, 2019

ORDER

Entitlement to service connection for a lumbar spine disability, to include degenerative disk disease, is denied.

Entitlement to service connection for a right knee disability, to include degenerative joint disease, is denied.

Entitlement to service connection for a left knee disability, to include degenerative joint disease, is denied.

FINDINGS OF FACT

1. The preponderance of the evidence shows that the Veteran’s lumbar spine disability, to include degenerative disk disease, is not causally or etiologically related to any disease, injury, or incident in service; arthritis was not noted chronic in service, did not manifest to a compensable degree within one year of separation or demonstrate continuity of symptomatology. 

2. The preponderance of the evidence shows that the Veteran’s right knee disability, to include degenerative joint disease, is not causally or etiologically related to any disease, injury, or incident in service; arthritis was not noted as chronic in service, did not manifest to a compensable degree within one year of separation or demonstrate continuity of symptomatology. 

3. The preponderance of the evidence shows that the Veteran’s left knee disability, to include degenerative joint disease, is not causally or etiologically related to any disease, injury, or incident in service; arthritis was not noted as chronic in service, did not manifest to a compensable degree within one year of separation or demonstrate continuity of symptomatology. 

CONCLUSIONS OF LAW

1. The Veteran’s lumbar spine disability, to include degenerative disk disease, is unrelated to service nor may arthritis be presumed to have been incurred therein. 38 U.S.C. §§ 1110, 1112, 5107; 38 C.F.R. §§ 3.102, 3.303, 3.307, 3.309. 

2. The Veteran’s right knee disability, to include degenerative joint disease, is unrelated to service nor may arthritis be presumed to have been incurred therein. 38 U.S.C. §§ 1110, 1112, 5107; 38 C.F.R. §§ 3.102, 3.303, 3.307, 3.309. 

3. The Veteran’s left knee disability, to include degenerative joint disease, is unrelated to service nor may arthritis be presumed to have been incurred therein. 38 U.S.C. §§ 1110, 1112, 5107; 38 C.F.R. §§ 3.102, 3.303, 3.307, 3.309. 

REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

The Veteran had active service from July 1971 to July 1974. 

On August 23, 2017, the President signed into law the Veterans Appeals Improvement and Modernization Act, Pub. L. No. 115-55 (to be codified as amended in scattered sections of 38 U.S.C.), 131 Stat. 1105 (2017), also known as the Appeals Modernization Act (AMA). This law creates a new framework for Veterans dissatisfied with VA’s decision on their claim to seek review. The Veteran chose to participate in VA’s test program RAMP, the Rapid Appeals Modernization Program. This decision has been written consistent with the new AMA framework.

The Board notes that the rating decision on appeal was issued in December 2014. The Veteran selected the Higher-Level Review lane when he submitted a RAMP election form on February 6, 2018. Thus, in February 2018, the Veteran elected the modernized review system. 84 Fed. Reg. 138, 177 (Jan. 18, 2019) (to be codified at 38 C.F.R. § 19.2(d)). An April 2018 RAMP rating decision considered the evidence of record as of the date VA received the RAMP election form. In February 2019 the Veteran timely appealed to the Board this RAMP rating decision to the extent that it denied his claims of entitlement to service connection for disabilities of the back and knees and requested direct review of the evidence considered by the Agency of Original Jurisdiction (AOJ).

VA treatment records were added to the claims file during a period of time when new evidence was not allowed. Similarly, the Veteran’s representative in an April 2019 brief referenced medical literature during a period of time when new evidence was not allowed. Therefore, the Board may not consider this evidence. 84 Fed. Reg. 138, 182 (Jan. 18, 2019) (to be codified at 38 C.F.R. § 20.300). The Veteran may file a Supplemental Claim and submit or identify this evidence. 84 Fed. Reg. 138, 182 (Jan. 18, 2019) (to be codified at 38 C.F.R. § 3.2501). If the evidence is new and relevant, VA will issue another decision on the claim, considering the new evidence in addition to the evidence previously considered. Id. Specific instructions for filing a Supplemental Claim are included with this decision.

 

Issues 1-3: Entitlement to service connection for: a lumbar spine disability, to include degenerative disk disease; right knee disability, to include degenerative joint disease; and, left knee disability, to include degenerative joint disease. 

The Veteran contends that he was treated for lumbar spine and bilateral knee conditions during and since service and his current disabilities are related to service. See April 2015 notice of disagreement. 

The AOJ found that service treatment records in April 1974 show that the Veteran reported back pain for three to four days and VA examinations during the appeal period show diagnoses of lumbosacral strain and degenerative arthritis, and degenerative disk disease of the lumbar spine. See April 2018 RAMP higher level review rating decision. As for the knees, the AOJ noted that service treatment records document a left knee sprain while playing football in October 1973. Id. The AOJ also found that VA examinations show that diagnoses of the left knee include meniscal tear, degenerative arthritis, and anterior ligament tear. Id. As for the right knee, the AOJ found that service treatment records in December 1973 show that the Veteran had right knee sprain due to participating in a basketball game and VA examinations include diagnoses of right knee strain, degenerative arthritis, and meniscal tear. Id. 

The question in this case is whether a causal relationship or nexus exists between the Veteran’s active service and his lumbar spine and bilateral knee disabilities. 

The Board finds that a causal relationship or nexus cannot be presumed and is not at least as likely as not. 

Service connection may be granted for disability resulting from disease or injury incurred in or aggravated by active service. 38 U.S.C. § §§ 1131, 5107; 38 C.F.R. § 3.303. This may be accomplished by affirmatively showing inception or aggravation during service. 38 C.F.R. § 3.303(a). Service connection may also be granted for disability shown after service, when all of the evidence, including that pertinent to service, shows that it was incurred in service. 38 C.F.R. § 3.303(d). 

For a Veteran who served 90 days or more of active service after December 31, 1946, there is a presumption of service connection for arthritis (degenerative joint disease) if the disability is manifest to a compensable degree within one year of discharge from service. 38 U.S.C. § §§ 1112, 1137; 38 C.F.R. §§ 3.307, 3.309(a).

For the showing of chronic disease in service there is required a combination of manifestations sufficient to identify the disease entity and sufficient observation to establish chronicity at the time, as distinguished from merely isolated findings or a diagnosis including the word “chronic.” Continuity of symptomatology after discharge is required where the condition noted during service is not, in fact, shown to be chronic or where the diagnosis of chronicity may be legitimately questioned. 38 C.F.R. § 3.303(b); Walker v. Shinseki, 708 F.3d 1331 (Fed. Cir. 2013).

As will be discussed further below, as arthritis of the lumbar spine and knees was not manifested in service or for more than one year after service, it follows that service connection for arthritis on a presumptive basis is not warranted pursuant to 38 U.S.C. § §§ 1112, 1137; 38 C.F.R. §§ 3.307, 3.309(a). 

The remaining question is whether the Veteran has lumbar spine and bilateral knee disabilities that are related to service. In addition to the service treatment records discussed above, service treatment records in February 1974 document a sore left knee with swelling. The Board also notes that on the July 1974 report of medical history the Veteran denied having recurrent back and trick or locked knee.

Further, the July 1971 entrance examination shows a right knee scar, however the lower extremities were evaluated as normal. If defects, infirmities or disorders are not noted when a veteran is examined and accepted for service, the presumption of soundness may be rebutted by clear and unmistakable evidence that the disability existed prior to service and was not aggravated by service. See 38 U.S.C. § 1111; 38 C.F.R. § 3.304(b). As a right knee disability was not noted on the July 1971 entrance examination into service, the Veteran is entitled to the presumption of soundness. The notation of a right knee scar does not rise to the level of clear and unmistakable evidence that a right knee disability preexisted service. The evidentiary standard is an onerous one and the result must be undebatable. Thus, the presumption of soundness has not been rebutted regarding the Veteran’s right knee disability.

Post-service treatment records first show that the Veteran had lumbar spine and bilateral knee problems many years after service. See, e.g., June 2008 VA x-ray of the right knee that shows arthritis changes; April 2009 VA treatment records that document MRI findings of the right knee to include meniscal tears and degenerative cartilage; September 2009 VA treatment records that show meniscal tears in the left knee; February 2010 VA treatment records that show degenerative joint disease in both knees, a May 2011 VA MRI report of the left knee that shows the Veteran in October 2009 had a medial meniscectomy and abrasion chondroplasty; and a February 2012 VA MRI of the lumbar spine that shows multilevel spondylosis and disk bulging. The Board also notes that VA treatment records in April 2009 show that the Veteran denied having a history of right knee injury and incurred a lot of pain in his right knee the previous fall playing basketball. VA treatment records in November 2014 show that the Veteran complained of back pain for ten years. 

The Veteran was afforded VA examinations for his lumbar spine and knees in November 2014, September 2016, and January 2018. The November 2014 VA examination for the knees is not probative to the extent that the examiner did not address the Veteran’s right knee meniscus condition nor his left knee disability. The January 2014 VA examination of the lumbar spine also lacks probative value to the extent the examiner in rendering the opinion merely focused on the Veteran’s service treatment records and did not consider the Veteran’s longitudinal history of his back disability to include post-service treatment. The September 2016 VA examinations of the lumbar spine and bilateral knee disabilities also lack probative value to the extent that they are factually inaccurate as they indicated the Veteran had back and knee problems after service. Thus, the November 2014 and September 2016 VA examinations for the lumbar spine and knees need not be further considered. 

However, the VA examinations in January 2018 for the lumbar spine and knees are highly probative as the examiner considered the nature of the Veteran’s back and knee disabilities along with their medical histories. On VA examination for the knees in January 2018, the examiner noted that the Veteran related repeated strains to his knees during varied athletic activities. The Veteran stated his knees started bothering him five years after separation from service. The examiner noted that the Veteran’s bilateral knee condition progressed over the years and records show that between 2008 and 2009 the Veteran had diagnoses of tears and degenerative joint disease in his knees and underwent left knee surgery in 2009. After reviewing the claims folder and examining the Veteran the examiner opined that it is less likely than not that the Veteran’s claimed knee conditions are related to service as he had isolated knee complaints during service without ongoing knee problems during or shortly following exit from service. The examiner explained that the Veteran’s knee injuries during service were not consistent with significant knee injuries, noting that the Veteran’s separation examination from service showed normal knee evaluations and was negative for knee complaints. The examiner found it significant that treatment records show knee problems long after the Veteran’s separation from service. The examiner pointed out that an ortho consult in 2009 confirms knee problems of a one year duration. Thus, the examiner concluded that there was no nexus to link the Veteran’s current knee disabilities to his isolated complaints during service. 

On VA examination in January 2018 for the thoracolumbar spine, the examiner noted that the Veteran related straining his back during service, including falling into a river. He reported that his back continued to bother him after service and gradually worsened over the past ten years. After reviewing the claims folder and examining the Veteran the examiner opined that it is less likely than not that the Veteran’s back disability is related to service. The examiner opined that the Veteran had isolated strains without evidence of ongoing back problems during or shortly after separation from service. The examiner found it significant that the separation exam evaluated the back as normal and did not show chronic back issues. The examiner noted that records reveal low back complaints in 2008 of a six month duration and the Veteran had mid back degenerative joint disease diagnosed in 2002, which was long after the Veteran was separated from service and does not provide a nexus to service. 

The Board considers these opinions to be highly probative as the examiner considered the nature of the Veteran’s back disability and relevant longitudinal complaints in proffering the opinion. These opinions are uncontroverted by the other competent evidence of record. 

The Veteran is competent to report observable symptomatology capable of lay observation pertaining to his lumbar spine and bilateral knee disabilities. Although lay persons are competent to provide opinions on some medical issues, see Kahana v. Shinseki, 24 Vet. App. 428, 435 (2011), as to the specific issue in this case, the etiology of the lumbar spine and bilateral knee disabilities discussed herein fall outside the realm of common knowledge of a lay person. See Jandreau v. Nicholson, 492 F.3d 1372, 1377 n. 4 (Fed. Cir. 2007). The Veteran’s lumbar spine and bilateral knee disabilities are not the type of conditions that are readily amenable to mere lay diagnosis or probative comment regarding its etiology. See Davidson v. Shinseki, 581 F.3d 1313 (Fed. Cir. 2009).

The Veteran has not been shown to possess the requisite medical training, expertise, or credentials needed to render a diagnosis or a competent opinion as to medical causation. Nothing in the record demonstrates that the Veteran has received any special training or acquired any medical expertise in evaluating such disorders. Accordingly, the lay evidence does not constitute competent medical evidence and lacks probative value. As the lay evidence is not competent, the matter of whether it is credible is not reached.

 

Arthritis is included among the chronic diseases under 38 U.S.C. § 1101 and 38 C.F.R. § 3.309(a). Walker v. Shinseki, 708 F.3d 1331 (Fed. Cir. 2013). To the extent that the Veteran is asserting continuity of symptomatology, his assertions are outweighed by the evidence of record discussed above. Accordingly, because the preponderance of the evidence is against the claims of service connection for lumbar spine and bilateral knee disabilities, the benefit of the doubt doctrine is not for application. See 38 U.S.C. § § 5107; 38 C.F.R. § 3.102.

 

 

Thomas H. O'Shay

Veterans Law Judge

Board of Veterans’ Appeals

Attorney for the Board M. Mac, Counsel

The Board’s decision in this case is binding only with respect to the instant matter decided. This decision is not precedential, and does not establish VA policies or interpretations of general applicability. 38 C.F.R. § 20.1303.